# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

ROBERT EDWARD BURGER,                 )
                                      )
              Plaintiff,              )
                                      )
v.                                    )          Civil Action No. 7:14-cv-190
                                      )
CAROLYN W. COLVIN,                    )
Acting Commissioner of Social Security, )
                                      )
              Defendant.              )

## REPORT AND RECOMMENDATION

Plaintiff Robert Edward Burger ("Burger") challenges the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Burger alleges that the Administrative Law Judge ("ALJ") failed to comply with Social Security Regulation ("SSR") 12-2p regarding his treating physician's opinion and his longitudinal medical record. Burger further asserts that the case should be remanded to the Commissioner to evaluate additional evidence submitted to the Appeals Council, and that the ALJ failed to consider his moderate difficulties with concentration, persistence, or pace. I conclude that substantial evidence supports the Commissioner's decision on all grounds. Accordingly, I **RECOMMEND DENYING** Burger's Motion for Summary Judgment (Dkt. No. 10), and **GRANTING** the Commissioner's Motion for Summary Judgment. Dkt. No. 12.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Burger failed to demonstrate that he was disabled under the

1

Act.[1]  See Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001).  "Substantial evidence is such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it

consists of more than a mere scintilla of evidence but may be somewhat less than a

preponderance."  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and

alterations omitted).  The final decision of the Commissioner will be affirmed where substantial

evidence supports the decision.  See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Burger filed for DIB on December 10, 2010, claiming that his disability began on August

1, 2006.  R. 157-60.  Burger later amended his onset date to September 24, 2010.  R. 29, 154.

The Commissioner denied the application at the initial and reconsideration levels of

administrative review.  R. 58-66, 67-77.  On September 21, 2012, ALJ Joseph T. Scruton held a

hearing to consider Burger's disability claim.  R. 26-57.  Burger was represented by an attorney

at the hearing, which included testimony from Burger and vocational expert Mark Holloman.  Id.

On November 9, 2012, the ALJ entered his decision analyzing Burger's claim under the

familiar five-step process[2] and denying his claim for benefits.  R. 13-25.  The ALJ found that

---

[1] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work.  Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience.  See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[2] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work.  Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983).  The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability.  The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies.  42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

2

Burger suffered from the severe impairments of fibromyalgia, osteoarthritis, infrequent syncopal episodes of unknown etiology, hypertension, anxiety, and depressive component associated with a medical condition. R. 18. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 18-22. The ALJ concluded that Burger retained the residual functional capacity ("RFC") to perform sedentary work,[3] except that he is "limited nonexertionally to no work around unprotected heights or dangerous machinery and no climbing of ladders, ropes or scaffolds. The claimant's mild to moderate limitation in concentration further limits him nonexertionally to tasks that involve only short simple instructions throughout an 8-hour workday with ordinary employer provided breaks." R. 22. The ALJ decided that Burger could work at jobs that exist in significant numbers in the national economy and took administrative notice of more than 200 sedentary unskilled occupations. R. 24-25. Thus, the ALJ concluded that he was not disabled. R. 25.

Burger appealed the ALJ's decision, and submitted additional evidence to the Appeals Council. R. 4. On February 22, 2014, the Appeals Council denied Burger's request for review (R. 1-5), and this appeal followed.

## ANALYSIS

Burger challenges the ALJ's and Appeal Council's review of the opinions and medical evidence supporting his diagnosis of fibromyalgia. Burger asserts that the ALJ failed to comply with SSR 12-2p by giving little weight to his treating physician's opinion and failing to consider the longitudinal record. Burger further claims that the case should be remanded to the

---

[3] An RFC is an assessment, based upon all of the relevant evidence, of what a claimant can still do despite her limitations. 20 C.F.R. § 404.1545. Descriptions and observations of a claimant's limitations by her and by others must be considered along with medical records to assist the Commissioner in deciding to what extent an impairment keeps a claimant from performing particular work activities. Id. The Social Security Administration classifies jobs as sedentary, light, medium, heavy, and very heavy. 20 C.F.R. § 404.1567(a).

3

Commissioner to consider additional evidence of his fibromyalgia submitted to the Appeals Council. Burger also raised for the first time at oral argument that the Commissioner failed to account for his moderate limitation in concentration, persistence, or pace. As acknowledged by the ALJ at his hearing and evident from the parties' briefs, the severity of Burger's fibromyalgia claim rises and falls with the opinion of his treating rheumatologist, Joseph P. Lemmer, M.D. I find that substantial evidence supports the ALJ's review of Dr. Lemmer's opinion, he properly reviewed Burger's longitudinal record pursuant to SSR 12-2p, and the additional evidence would not change the outcome of this case and does not require a remand. I also find that the ALJ considered Burger's moderate limitations in concentration, persistence, or pace.

### Treating Physician Opinion

Burger claims that substantial evidence does not support the ALJ's decision because the ALJ erred by giving "little weight" to the opinion of his treating rheumatologist Dr. Lemmer. Dr. Lemmer treated Burger for fibromyalgia beginning in November 2010 and submitted two disability forms to the ALJ claiming Burger's inability to work.

On March 18, 2011, Dr. Lemmer gave the opinion that Burger can nonrepetitively lift ten pounds; stand, walk, and sit for two to four hours in an eight-hour workday; occasionally stoop, climb, balance, crouch, kneel, crawl, and push/pull; and occasionally reach, handle, finger, and feel. R. 419-20. Based on this checkbox-based assessment, Dr. Lemmer determined Burger could perform less than sedentary work and that his fibromyalgia would cause pain that interrupts his activities or concentration, requires unpredictable or lengthy periods of rest, and very frequently causes him to be absent from work. R. 421. Dr. Lemmer did not cite support for his opinions or provide a written explanation of the basis of his opinions.

On August 1, 2011, Dr. Lemmer gave another primarily checkbox-based disability opinion for Burger's long-term disability carrier. R. 531-33. Dr. Lemmer found that Burger occasionally could sit, stand, walk, reach, grasp, or manipulate for fewer than two-and-a half hours per day. R. 532. He barred Burger from repetitive bending or lifting, repetitive use of the arms and legs, and lifting, carrying, pushing, or pulling above ten pounds; required rest every hour for thirty minutes; and allowed occasional lifting, climbing, balancing, stooping, kneeling, crouching, crawling, and use of the lower extremities for foot controls. R. 531, 533. Dr. Lemmer wrote Burger had been terminated because "[n]o offer was made to change work description" and that it was unknown when he could return to work with or without restrictions. R. 531. Again, Dr. Lemmer did not cite support for his opinions.

A treating physician's opinion is not automatically entitled to controlling weight. The social security regulations require that an ALJ give the opinion of a treating source controlling weight, if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2). Medical specialists who have examined a claimant normally are accorded more weight than a general medical examiner. See Taylor v. Colvin, No. 7:13CV00536, 2014 WL 4385796, at *4 (W.D. Va. Sept. 4, 2014). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. Id.; Saul v. Astrue, Civ. Action No. 2:09-cv-1008, 2011 WL 1229781 (S.D. W.Va. March 28, 2011). Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence;

5

(4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. § 416.927(c)(2)-(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, No. 2:09cv622, 2010 WL 6621693, at *10 (E.D. Va. Dec. 29, 2010). While the regulations require the ALJ to consider all five factors, the ALJ is "not required to make a seriatim assessment as if it were a sequential evaluation." Vaughn v. Astrue, No. 4:11-cv-29, 2012 WL 1267996, at *5 (W.D. Va. Apr. 13, 2012).

The ALJ gave little weight to Dr. Lemmer's medical opinions. The ALJ found that Dr. Lemmer's office notes, including his early recommendations that Burger should find another line of work, did not support a finding that Burger cannot work in any capacity. R. 23. The ALJ also noted that recent evidence showed a general improvement trend, Dr. Lemmer only treated Burger every four months, and Burger's former employer did not offer less strenuous work. Id. Unlike Dr. Lemmer's recommendation, the ALJ did not think that the record precluded Burger from relatively non-stressful sedentary work that involved mostly sitting. Id. In weighing this opinion, the ALJ reviewed all of the factors required by 20 C.F.R. § 416.927(c) by noting Dr. Lemmer's specialization in rheumatology, his treatment relationship and its frequency with Burger, and how his opinion compared with his office notes and the remaining record. R. 20, 23.

Substantial evidence supports the ALJ's decision to give little weight to Dr. Lemmer's opinion because his office notes do not support such extreme recommendations. Burger received his first examination from Dr. Lemmer on November 23, 2010, where Burger traced his overall poor health back to a bee sting occurring in 2005. R. 377, 429. Burger developed aches, pains, and difficulties gripping in 2007 or 2008, which were aggravated by heavy work but assuaged by hot baths. R. 377, 429. Dr. Lemmer examined Burger and noted "[g]eneralized myalgias and

arthralgias with tender points consistent with fibromyalgia syndrome," along with fatigue and a host of other medical problems. R. 378-79, 430-31. Dr. Lemmer encouraged massage, heat, and stretching; he also "talked at length about the fact that he may need a different kind of work as he is no longer physically able to tolerate heavy labor." R. 379, 431. Dr. Lemmer continued Burger on his medications and added Flexeril to manage his fibromyalgia. R. 379, 431.

Burger returned for treatment with Dr. Lemmer on February 9, 2011, complaining of aches, pains, and fatigue but stating his pain felt better than last visit; Dr. Lemmer diagnosed him with moderate fibromyalgia. R. 424-25. On March 18, 2011, Burger discussed his "persistent chronic pain in the shoulders, arms, legs and hips" with Dr. Lemmer, who again recommended massage, heat, stretching, stress management, and improved sleep. R. 423. At the April 14, 2011 appointment, Burger cited no "major changes" and complained of pain, fatigue, worsening endurance, and difficulty functioning. R. 510. Burger reported no change in pain at his August 1, 2011 appointment, with variable pain in the morning and worsened pain after resting. R. 506-07. Burger returned for treatment with Dr. Lemmer five months later on December 29, 2011, noting unchanged moderate fibromyalgia with consistent levels of pain soothed by a hot shower and massage. R. 503-04. In Dr. Lemmer's final treatment record before the ALJ dated May 8, 2012, Dr. Lemmer noted "improved" fibromyalgia, variable pain, improved fatigue, and Burger's report of feeling "pretty good." R. 499-500. Although Burger clearly suffers from fibromyalgia that merits regular treatment, Dr. Lemmer's office notes do not include functional limitations or severe symptoms suggesting that Burger cannot work full-time in any capacity. Burger's fibromyalgia symptoms naturally waxed and waned, but they never worsened to the point where he appeared incapable of work. The longitudinal record from Dr. Lemmer's office notes supports a finding of sedentary work.

7

The remainder of the record also does not support Dr. Lemmer's recommendations. During general care appointments with Jason Flassing, PA-C beginning in late 2008, Burger complained of diffuse muscle pain, joint pain, fatigue, arthralgias, and myalgias. R. 331-52. Mr. Flassing noted Burger's complaints of "pressure point-like paints in his low back, shoulders and hips as well in addition to his wrists and fingers" and gave a likely diagnosis of fibromyalgia in January 2010. R. 337. After a normal examination in August 2010, Mr. Flassing recommended therapeutic intervention for fibromyalgia. R. 332-34. None of Mr. Flassing's notes included functional limitations. From July 2009 through November 2010, Burger also met with rheumatologist Edward Tackey, M.D. for aches, stiffness, and pains of unclear etiology that worsened with activity; examinations were unremarkable and Burger had a full range of motion. R. 384, 398-405, 435-39, 455, 458-59. Dr. Tackey did not mention any functional limitations. Neurologist Ivaylo Staykov, M.D. met with Burger and diagnosed him with polyarthralgia, noting symptoms of tingling, numbness, and pain with unremarkable examinations from August 2010 through December 2012. R. 381-91, 427-28, 433-35, 440-41, 446-47, 462-63, 502, 509. Dr. Staykov recommended not working, though the recommendation appears associated with Burger's fainting spells that have since been resolved. See, e.g., R. 33, 376, 385-86, 440, 451-52. No other functional limitations were noted. Two state agency physicians evaluated Burger's record and found him capable of light work. R. 61-63, 72-74. The medical record does not show severe symptoms or functional limitations meriting disability.

In addition to the medical record, Burger testified about his variable pain and how he must lay in bed on his worst days. R. 44. Even on his good days, Burger testified that his "pain level [is] between a four and five, but [he] manage[s] to push through and do what [he] can do." R. 44-45. Burger stated that he often feels very tired and fatigued, struggles to move his

extremities, and sometimes cannot travel due to pain. R. 47, 50, 53. Burger acknowledged that in May 2012 "[t]here was minor improvement due to increase of medication." R. 46. Although Dr. Lemmer's notes and the rest of the record support fibromyalgia symptoms, they do not support the extent of Burger's allegations. This determination is not based on objective evaluations, but on the doctors' notes and Burger's self-reported complaints within those notes. Other than Burger's testimony, the evidence of the record does not corroborate Dr. Lemmer's opinion requiring less than sedentary work.

Despite the general lack of support for Dr. Lemmer's opinion in the record, Burger specifically challenges each of the ALJ's reasons for supporting the assignment of little weight: (1) Dr. Lemmer's suggestion that he find a different line of work, (2) Burger's general improvement trend, (3) the treatment schedule of appointments every four months, and (4) Dr. Lemmer's note that his prior employment did not offer less strenuous work. Burger counters that these four justifications do not individually or cumulatively support the ALJ's decision to give little weight to Dr. Lemmer's opinion. I find that Burger's arguments lack merit.

The ALJ reasonably concluded that Dr. Lemmer's November 2010 recommendation to consider another line of work conflicted with his finding in the March 2011 disability form that Burger could not complete sedentary work. Although Burger contends Dr. Lemmer intended to recommend part-time work in November 2010, the ALJ reasonably assumed otherwise because Dr. Lemmer only discussed a change away from "heavy labor" and his notes did not include any functional limitations. R. 431. Moreover, Dr. Lemmer never explicitly recommended part-time work in his March 2011 opinion. R. 419. Dr. Lemmer had the opportunity to check boxes stating "[u]nable to work 8-hour days on a regular sustained basis," "[d]isabled from substantial work activity," and "[t]otally disabled from any work activity;" he instead selected the less than

sedentary work checkbox, which presumed full-time work based on the other options in the form.  R. 421   The ALJ reasonably assessed Dr. Lemmer's statements to be in conflict.

Substantial evidence also supports the ALJ's determination that Burger's condition was improving.  Burger noted improved pain in his first treating appointment with Dr. Lemmer in February 2011.  R. 424-25.  He complained of persistent pain in March 2011 (R. 423), and then cited no changes in April, August, or December 2011. R. 503-08, 510-11.  Cf. Batson v. Colvin, No. 7:14-CV-48-D, 2015 WL 1000791, at *10 (E.D.N.C. Mar. 5, 2015) (citing cases where a claimant with stable and controlled pain still could be found functionally limited).  During Lemmer's last appointment on record in May 2012 however, Dr. Lemmer noted "improved" fibromyalgia, "better" fatigue, and Burger's self-report that he felt "pretty good" though no change in functioning.  R. 500.  Burger's stretches between appointments with Dr. Lemmer were increasing and extending longer than Dr. Lemmer's recommendation; less treatment would suggest an overall improvement in his symptoms.  Burger also acknowledged a small improvement in May following an increase in medication.  R. 46.  The record showed signs of improvement. The court recognizes that Dr. Lemmer submitted a letter following the ALJ's decision clarifying that Burger's symptoms were in fact not improving.  R. 534.  However, the ALJ is the fact finder and had the responsibility of deciding whether the record reflected improvements in Burger's fibromyalgia.  The court's detailed review of each of Dr. Lemmer's appointments found at least a trend of improvement, with self-reports of improved health and lengthening time between appointments.  Recognizing that fibromyalgia symptoms wax and wane pursuant to SSR 12-2p, substantial evidence still supports the ALJ's finding that Burger experienced at least some improvement unaccounted for in Dr. Lemmer's opinion.[4]

_____

[4] Burger contends that even if the ALJ correctly assumed his improved condition, he still would be disabled because the vocational expert testified sedentary work required frequent use of the upper limbs and did not allow for

10

Burger next argues that the ALJ incorrectly discredited Dr. Lemmer's opinion when he considered the four-month treatment plan conservative because treatment options for fibromyalgia tend to be conservative and no authority establishes a standard course of treatment for disabling fibromyalgia. Burger correctly cites Ellis v. Colvin, No. 5:13CV00043, 2014 WL 2862703 (W.D. Va. June 24, 2014), to explain that disabling fibromyalgia may receive conservative treatment and that a claimant cannot be faulted for failing to pursue nonexistent non-conservative treatment, see id. at *9; however, Ellis also notes that the level of treatment still can be considered. The court in Ellis wrote,

> But that doesn't mean an ALJ may not consider the nature of treatment at all in fibromyalgia cases. Even for fibromyalgia patients, it is possible to differentiate between a relatively aggressive course of treatment, see, e.g., Grimsley, 2009 WL 737109, at *7 ("The medical records reflect ... that [the plaintiff's rheumatologist] repeatedly changed [her] medications and dosages in an effort to better alleviate her pain and fatigue."), and a relatively conservative one, see, e.g., Cordell v. Astrue, No. 4:09–cv–19, 2010 WL 446944, at *15 (E.D. Tenn. Feb. 2, 2010) ("Here, in a single treatment note from December 2005, Dr. Mangru diagnosed Plaintiff with fibromyalgia and prescribed a rather conservative course of care consisting of psychotropic medications [Effexor and Lyrica] and continued physical therapy...."). Furthermore, "when considered with other information, the routine nature of a course of treatment may indicate that a condition is not as severe as a plaintiff's subjective complaints may otherwise indicate." Viverette, 2008 WL 5087419, at *2.

2014 WL 2862703, at *10. Doctors' notes about problems controlling a claimant's fibromyalgia symptoms and challenges finding effective treatment may support a finding of disability. See Grimsley v. Astrue, No. CIV A 1:07CV00763, 2009 WL 737109, at 7-8 (M.D.N.C. Mar. 23, 2009). Dr. Lemmer's notes do not suggest that he had trouble controlling Burger's fibromyalgia

---

frequent absences. See R. 55. Dr. Lemmer gave the opinion that Burger could occasionally reach, handle, finger, feel, and grasp. R. 420, 532. He also found that Burger would be absent from work "very frequently" due to his impairments. R. 421. Dr. Lemmer never noted these functional limitations in his office notes. The court finds no support in the record for these functional limitations and Burger does not offer any guidance as to why the ALJ's rejection of these limitations should be overruled. The court does not find any merit to this argument.

11

or that he was experimenting with varying treatment; his notes suggest less and less frequent appointments, a fairly standard medication routine, and no use of more severe treatments such as trigger point injections. The ALJ did not require objective evidence of fibromyalgia, but simply took into consideration his treatment plan as allowed under both SSR 12-2p and SSR 96-7p. See e.g., Cherney v. Colvin, No. 2:12-3366-TMC, 2014 WL 1268575, at *5 (D.S.C. 2014); Rowe v. Astrue, No. 08–24–HRW, 2008 WL 4890228, at *3 (E.D. Ky. Nov.7, 2008). Substantial evidence supports the ALJ's consideration of the four-month treatment plan.

Burger's final contention is that the ALJ should not have drawn negative inferences from Dr. Lemmer's note that Burger's employer did not offer less strenuous work. Burger argues that this "one unrepresentative comment" was ambiguous and incorrectly relied upon to discredit Dr. Lemmer's opinion. The ALJ wrote, "the forms completed for insurance purposes by Dr. Lemmer in August of 2011, as detailed above, indicate the claimant's employer did not offer, or have, less strenuous work. While it is accurate that the claimant can [no] longer perform strenuous physical tasks associated with his former work, the record does not show he is precluded from unskilled, sedentary work that mostly involves sitting and is relatively non-stressful." R. 23. The ALJ did not appear to draw a negative inference from Dr. Lemmer's note about Burger's last employment, but only found that it did not lend support to Dr. Lemmer's finding that Burger could not work in any capacity. The court recognizes that Dr. Lemmer made the statement within the context of a form suggesting Burger is disabled, but it does not cancel out Dr. Lemmer's assertion that less strenuous work was unavailable at Burger's prior employment. The ALJ fairly considered this statement in assessing whether Burger can perform work in any capacity. Moreover, although the ALJ relied on this one allegedly unrepresentative

12

statement, he also considered a number of other reasons in considering Dr. Lemmer's opinion. Substantial evidence supports the ALJ's consideration of the reason behind Burger's termination.

The ALJ did not haphazardly discredit Dr. Lemmer's opinion because of lack of objective evidence, but thoughtfully provided several reasons about how his opinion did not align with his treatment records and the rest of the administrative record. Substantial evidence supports the ALJ's justifications for the little weight provided to Dr. Lemmer's opinion. Evaluating the record for claimants with fibromyalgia can be challenging due to lack of objective evidence for this disease. Not all ALJs may have afforded Dr. Lemmer's opinion little weight; some ALJs may have glossed over Dr. Lemmer's lack of detail in treatment notes to give Burger the benefit of the doubt. However, a reasonable ALJ could have reviewed Burger's record and come to the same conclusion regarding Dr. Lemmer's opinion. Given the evidence set forth above, I find substantial support for the ALJ's decision not to adopt the restrictive limitations recommended by Dr. Lemmer.

### Longitudinal Record

Burger also argues that the ALJ did not comply with SSR 12-2p by failing to consider his longitudinal record of fibromyalgia. "According to SSR 12–2p, a claimant can establish a medically determinable impairment of fibromyalgia if a physician has diagnosed fibromyalgia and the claimant satisfies certain diagnostic criteria. Once a medically determinable impairment of fibromyalgia has been established by medical and other evidence, the Commissioner will apply the five-step sequential evaluation to determine whether the claimant is disabled." Lillard v. Comm'r, Soc. Sec., No. CIV. JKB-13-1458, 2014 WL 2004710, at *2 (D. Md. May 14, 2014) (internal citations omitted). The Commissioner must "consider a longitudinal record whenever possible because the symptoms of FM can wax and wane so that a person may have 'bad days

13

and good days.'" SSR 12-2p. The longitudinal record allows the Commissioner to more accurately establish the existence and severity of a claimant's fibromyalgia. See McIntire v. Colvin, No. 3:13-CV-143, 2015 WL 401007, at *43 (N.D.W. Va. Jan. 28, 2015). SSR 12-2p also directs the ALJ to evaluate the claimant's self-reported symptoms and functional limitations associated with fibromyalgia; the ALJ first determines whether objective evidence demonstrates an impairment capable of causing the degree and type of pain alleged, and then reviews whether the claimant is credible in light of the entire record. See id. (citing Craig v. Chater, 76 F.3d 585, 594–95 (4th Cir.1996)) (internal citations and quotations omitted). A claimant's functional abilities at isolated appointments should not discredit his credibility; "the nature of fibromyalgia means that a patient's ability to perform certain tasks or postural maneuvers on a given day does not necessarily reflect an ability to perform those tasks and maneuvers on a sustained basis." Winkler v. Comm'r, Soc. Sec. Admin., No. CIV. SAG-14-2720, 2015 WL 4069334, at *4 (D. Md. July 2, 2015).

The ALJ recognized and followed the requirements of SSR 12-2p. Although the ALJ did not expressly cite the regulation in his decision, he and Burger's counsel discussed how SSR 12-2p applied to Burger's case at the hearing. R. 35-36. The ALJ found that Burger had a medically determinable severe impairment of fibromyalgia; the contested issue is whether the ALJ adequately reviewed the longitudinal record to determine Burger's resulting functional limitations. See Goodwin v. Colvin, No. 2:14-CV-11582, 2015 WL 1181392, at *25 (S.D.W. Va. Mar. 13, 2015). The ALJ reviewed Burger's medical records relating to his fibromyalgia at both step three and in the development of the RFC. The ALJ discussed Burger's early symptoms and treatment with Mr. Flassing, Dr. Staykov, and Dr. Tackey. R. 19. The ALJ wrote in detail about Burger's first examination with Dr. Lemmer, summarized his symptoms and treatment

from Dr. Lemmer's appointments from February through early August 2011, and discussed apparent improvements based on his 2012 appointments with Dr. Lemmer and Dr. Staykov. R. 20-21. The ALJ did not write about every detail from Dr. Lemmer's appointments, but he was not required to do so. "The ALJ need not address every piece of evidence in the record." Batson v. Colvin, No. 7:14-CV-48-D, 2015 WL 1000791, at *10 (E.D.N.C. Mar. 5, 2015) (citing Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014).

From the court's review of Dr. Lemmer's treatment records, the ALJ fairly considered the longitudinal record and did not cherry pick information. Dr. Lemmer's records document the waxing and waning of symptoms, but offer very little information about Burger's functional limitations. See Myers v. Colvin, No. 1:13CV898, 2015 WL 4366201, at *5 (M.D.N.C. July 16, 2015) ("Plaintiff points to nothing in Dr. Jarrahi's treatment notes to support the level of incapacitation he opines, and the Court's review of these records, like that of the ALJ, reveals none."). Although objective findings cannot be the sole basis for a fibromyalgia decision and the Commissioner must consider subjective complaints and daily activities, the record still must show some symptoms or functional limitations that suggest disability; in this case, the longitudinal record–based primarily on Dr. Lemmer's treatment records–did not include this evidence and thus did not support a finding of disability. The ALJ did not make his decision based on one or two treatment records, but fairly reviewed all of the treatment records.

After reviewing the longitudinal record of medical evidence, the ALJ also considered Burger's testimony but did not find it credible. See Koch v. Colvin, No. 2:13-CV-6780, 2014 WL 2589590, at *21 (S.D.W. Va. June 10, 2014) (explaining that the Commissioner has to follow the two-step process set forth in SSR 96-7p to determine resulting functional limitations). The ALJ found that Burger's testimony was not credible because his other physical impairments

were unsupported by the objective evidence, he responded positively to medications, and his testimony that he only had three good days per week was inconsistent with the objective medical evidence and Dr. Lemmer's records. R. 23.

Burger asserts that the ALJ failed to address the symptom variability in his testamentary evidence, and specifically highlights that the ALJ incorrectly summarized the longitudinal record when he stated Burger testified to having three good days per week. Although the ALJ did not discuss Burger's testimony about his fibromyalgia symptoms, he did review Dr. Lemmer's treatment notes, which are extensively composed of Burger's self-reported symptoms. The ALJ does not have to state every piece of evidence in the record, particularly where it would be repetitive with self-reports from other sources. The court also reviewed the line of questioning about Burger's "good days" in the record and finds that the ALJ's questions and Burger's responses were unclear. R. 44 (discussing how Burger claims to have one to three bad days per week, and then agreeing with the ALJ's estimate of approximately three good days per week). Moreover, this was only one factor of several stated reasons for not finding Burger credible. The ALJ ideally should have discussed and evaluated Burger's hearing testimony about fibromyalgia; however, the ALJ gave undisputed reasons for why Burger was not credible on the whole. Collectively considering the longitudinal record and Burger's testimony about his fibromyalgia symptoms and functional abilities, the ALJ reasonably found Burger not credible and capable of sedentary work. See Craig, 76 F.3d at 589; Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984); Myers v. Colvin, No. 1:13CV898, 2015 WL 4366201, at *4 (M.D.N.C. July 16, 2015) (affirming where ALJ accepted diagnosis of fibromyalgia but concluded that objective medical findings, medical reports, and claimant's asserted activity level did not support her assertions of severe fibromyalgia symptoms).

16

Burger essentially asks the court to reweigh the evidence of record. The function of the court is to determine whether the Commissioner's decision is supported by substantial evidence and a proper application of the law. Other than Dr. Lemmer's opinion, no other records note functional limitations below sedentary work. There is no doubt that Burger suffers from fibromyalgia; the record simply does not demonstrate that it is disabling. As the Fourth Circuit has noted, "[s]ome people may have such a severe case of fibromyalgia as to be totally disabled from working, but most do not." Stup v. UNUM Life Ins. Co. of Am., 390 F.3d 301, 303 (4th Cir. 2004), abrogated on other grounds, Metro. Life Ins. Co. v. Glenn, 554 U.S. 105 (2008); see also Davis v. Colvin, No. 1:13-CV-768 GBL/IDD, 2014 WL 4181025, at *7 (E.D. Va. Aug. 18, 2014) ("[I]t should be noted that one who suffers from fibromyalgia is not necessarily disabled."); Simonin v. Astrue, No. 3:10–2808–JFA–JRM, 2012 WL 988049, at *7 (D.S.C. Feb. 27, 2012) ("A diagnosis of fibromyalgia is not disabling, per se.").

Given the ALJ's and counsel's discussion of SSR 12-2p at the hearing, the ALJ's written discussion of Burger's fibromyalgia treatment, and his consideration of Burger's credibility, the ALJ was well aware of his obligations and incorporated them into his decision. See Foley v. Comm'r, Soc. Sec., No. CIV. ELH-14-1014, 2015 WL 151374, at *3 (D. Md. Jan. 9, 2015) (""While the ALJ's decision in this case does not expressly refer to Social Security Ruling 12-2p, … the ALJ complied with its dictates by determining fibromyalgia to be a medically determinable (and severe) impairment and by considering all of the record evidence, including … [the claimant's] subjective allegations of pain."). The ALJ followed the dictates of SSR 12-2p and accounted for the credibly established limitations in the RFC assessment. See Walker-Conley v. Colvin, No. CIV.A. 6:14-1262-MGL, 2015 WL 4743723, at *5 (D.S.C. Aug. 10, 2015). Substantial evidence supports his decision.

17

**Additional Evidence**

Burger contends that his claim should be remanded for further administrative consideration based upon additional evidence submitted to the Appeals Council. Burger submitted a clarifying opinion from Dr. Lemmer and two additional treatment records. R. 4. After considering the additional evidence and reviewing the entire record, the Appeals Council found "that this information does not provide a basis for changing the Administrative Law Judge's decision." R. 2. I find that this evidence does not warrant remand.

The December 21, 2012 medical opinion from Dr. Lemmer clarified that Burger's fibromyalgia symptoms are variable and that Burger's fibromyalgia has not significantly and permanently improved. Dr. Lemmer also explained that the four-month treatment schedule is a "medically appropriate treatment schedule for Mr. Burger's chronic fibromyalgia syndrome" and "does not indicate that his condition has resolved or permanently improved." R. 534. The October 24, 2012 treatment record showed that four-and-a-half months passed since Burger's last appointment and that Burger's fibromyalgia was "overall somewhat improved;" Dr. Lemmer set his return visit for six months later. R. 535. The treatment notes from the December 21, 2012 visit referenced complaints of "generalized aching," "moderate fatigue and anxiety," and "continued inability to function in any specific capacity even at home." R. 536. Both records lack the handwritten notes that accompanied Dr. Lemmer's prior treatment records.

The regulations permit a claimant to submit "new and material evidence" to the Appeals Council. Evidence is new if it is not duplicative or cumulative; it is material if there is a reasonable possibility it would have changed the outcome of the Commissioner's decision. Meyer v. Astrue, 662 F.3d 700, 704–05 (4th Cir. 2011) (citing Wilkins v. Sec'y, Dep't of Health and Human Servs., 953 F.2d 93, 96 (4th Cir. 1991)). The Appeals Council will consider the

18

additional evidence "only where it relates to the period on or before the date of the [ALJ's] hearing decision." Id. (citing 20 C.F.R. § 416.1470(b)). The Appeals Council does not require good cause to admit previously existing records. Id. Upon the Appeals Council's denial of Burger's request for review, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981. The Appeals Council does not have to provide express, specific findings on the record regarding a claimant's additional evidence. As the Fourth Circuit clarified in Meyer, "nothing in the Social Security Act or the regulations promulgated pursuant to it requires that the Appeals Council explain its rationale for denying review." Meyer, 662 F.3d at 705; see also Hollar v. Comm'r Of Soc. Sec. Admin., 194 F.3d 1304, at *1 (4th Cir. 1999) (noting that the "regulation addressing additional evidence does not direct that the Appeals Council announce detailed reasons for finding that the evidence did not warrant a change in the ALJ's decision").

This Court must "review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the [Commissioner's] findings." Wilkins, 953 F.2d at 96. "However, the Fourth Circuit has also admonished that it is the role of the ALJ, and not reviewing courts, to resolve conflicts in the evidence." Davis v. Barnhart, 392 F. Supp. 2d 747, 751 (W.D. Va. 2005) (citing Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996)). Thus, when faced with new evidence, a court must reconcile its duty under Wilkins to review the entire record including the new evidence to determine if there is a reasonable possibility that it would change the outcome, with its obligation under Smith to abstain from making credibility determinations and resolving factual conflicts. See Davis, 392 F. Supp. 2d at 751. Upon review of records that were before the ALJ and were submitted to the Appeals Council, courts must determine whether substantial evidence supports the ALJ's decision and whether the submitted

evidence may change his finding.  See Hollar, 194 F.3d at *2 (citing Browning v. Sullivan, 958 F.2d 817, 822-23 (8th Cir. 1992).

In this case, the Appeals Council's consideration of the additional evidence and denial of review met its obligations under the agency's regulations.  Burger has the burden of demonstrating that a remand is appropriate given any new and material evidence.  See Sunderland v. Colvin, 5:12CV00020, 2013 WL 4501418, at *8–9 (W.D. Va. Aug. 22, 2013) (citing Meadows v. Astrue, 5:08-CV-01129, 2010 WL 1380117, at *3 (S.D.W. Va. Mar. 31, 2010)).  Burger has not demonstrated that remand is appropriate.  As discussed in Meyer, remand is appropriate when a fact finder has not made any findings on competing evidence submitted to the Appeals Council, and thus the reviewing court cannot determine whether substantial evidence supports the ALJ's denial of benefits.  See Meyer, 662 F.3d at 707.  Although Burger argues that Dr. Lemmer's additional opinion and treatment records address the "key inconsistencies" the ALJ relied upon in discrediting Dr. Lemmer's opinion, his arguments for how the additional evidence could change the outcome of the case ultimately fall short.

Dr. Lemmer's opinion and the two new treatment records relate back to the relevant time period.[5]  However, the opinion and records ultimately are not material and thus would not have changed the ALJ's decision.  The October and December 2012 treatment records do not provide new information for the ALJ to employ in assessing Dr. Lemmer's opinion or forming Burger's RFC.  The October 2012 record again notes improvement, which does not support Burger's argument that his fibromyalgia was disabling at the time of decision.  The December 2012 record

---

[5] The evidence predates and postdates the ALJ's November 2012 decision.  However, these newly submitted records address the same fibromyalgia that Burger has struggled with for years.  There is no evidence of an intervening event to suggest that a change in Burger's fibromyalgia occurred from the time of the ALJ's decision through his last submitted record.  Given that Burger's new evidence extends about one month after the ALJ's decision, the evidence still is relevant to the adjudication period because it is unlikely that Burger's fibromyalgia changed within such a short time period.  See McGinnis v. Astrue, 709 F. Supp. 2d 468, 473 (W.D. Va. 2010).

provides internally conflicting information about whether the October appointment noted improvement or continued pain; this conflict further challenges Dr. Lemmer's credibility. Although Burger complained of a complete inability to function at home during this December appointment, this new information does not mesh with his statements from his hearing before the ALJ and does not include specific limitations that could have been used for the RFC analysis. The two treatment records show the waxing and waning of Burger's fibromyalgia symptoms, which the ALJ recognized through his assessment governed by SSR 12-2p. These records do not revive Dr. Lemmer's opinion and do not add possible limitations for consideration of the RFC.

Dr. Lemmer's new opinion letter also does not add information previously unavailable in the opinions and treatment records. The letter addresses two points from the ALJ's opinion: (1) Burger's four-month treatment plan and (2) Burger's alleged improvement. Dr. Lemmer's statement that the four-month treatment plan was "appropriate" for Burger's chronic fibromyalgia does not speak to the severity of his symptoms or the functional limitations that they cause; this does not add to the record or clarify his opinion. As for Burger's alleged improvement, it was within the ALJ's province as the fact finder to evaluate the record and weigh the relative worth of the evidence as a necessary part of making his disability decision. See 20 C.F.R. §§ 404.1520b, .1545(a)(3), .945(a)(3). After reviewing the new records and Dr. Lemmer's opinion, the court finds that the newly submitted records were not materially different than those before the ALJ. Moreover, Burger's counsel already notified the ALJ at the hearing that Dr. Lemmer had not noted any improvement; this simply was a difference of opinion. R. 46.

Even if Dr. Lemmer's opinion offered new material information, courts are reticent to remand on the basis of clarifying opinions submitted to the Appeals Council. See Blackwell v. Colvin, No. 1:14-CV-00085-MOC, 2014 WL 7339132, at *3-4 (W.D.N.C. Dec. 23, 2014)

("While this court's role is not to weigh the evidence on review, it does have an obligation to determine whether such evidence could conceivably fill an evidentiary gap as plaintiff suggests. Such later opinion could not fill an evidentiary gap as it is not supported by Dr. Armstrong's own relevant clinical findings or notes."); see also Austin v. Astrue, No. CA 0:11-2768-DCN-PJG, 2013 WL 1182230, at *3-4 (D.S.C. Jan. 23, 2013) report and recommendation adopted sub nom. Austin v. Colvin, No. 0:11-CV-02768-DCN, 2013 WL 1181952 (D.S.C. Mar. 21, 2013). The Appeals Council clearly considered Dr. Lemmer's opinion and its review did not find such material information as to warrant a change in the ALJ's decision. See Lemken v. Astrue, No. 5:07-CV-33-RLV-DCK, 2010 WL 5057130, at *9 (W.D.N.C. July 26, 2010) report and recommendation adopted, No. 5:07CV33-RLV, 2010 WL 5057127 (W.D.N.C. Dec. 6, 2010). The clarifying opinion's assertions that Burger's fibromyalgia was not improving and that a four-month treatment plan was a "medically appropriate treatment schedule for Mr. Burger's chronic fibromyalgia syndrome" fell within the fact-finding authority of the ALJ and has already been decided. This does not persuade the court there is now contrary evidence requiring remand.

Without conflicting evidence, or evidence that demonstrates some additional specific functional limitations or severity, substantial evidence supports the ALJ's decision. A remand is not necessary when the evidence supports the original decision. The records submitted to the Appeals Council contribute no new evidentiary value to the record. Moreover, given the substantial evidence in the record supporting the ALJ's decision, there is no reasonable possibility that they would have altered the outcome of the case. As such, the evidence is not material and remand is not warranted.

**Concentration, Persistence, or Pace**

For the first time at oral argument, Burger briefly challenged the Commissioner's failure to properly account for his moderate limitations in concentration, persistence, or pace by limiting him to "tasks that involve only short simple instructions throughout an 8-hour workday with ordinary employer provided breaks." Although this argument arguably has been waived by failing to assert it during briefing, the court still finds that there was no error.

In Mascio v. Colvin, 780 F.3d 632, 638 (4th Cir. 2015), the Fourth Circuit held that an ALJ does not generally account for a claimant's limitations in concentration, persistence, and pace by restricting the claimant to simple, routine tasks or unskilled work. The court noted, "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." Id. at 638; see also Sexton v. Colvin, 21 F. Supp. 3d 639, 642-43 (W.D. Va. 2014) (citing Wiederholt v. Barnhart, 121 Fed. App'x 833, 839 (10th Cir. 2005) (holding that a "limitation to simple, unskilled work does not necessarily" accommodate a person's difficulty in concentrating on or persisting in a task, or maintaining the pace required to complete a task). In Mascio, the Fourth Circuit found that the ALJ did not explain why Mascio's moderate limitation in concentration, persistence, or pace did not translate into a limitation in his RFC. The court noted, however, that the ALJ may find that the concentration, persistence or pace limitation would not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. See 780 F.3d at 638; see also Hutton v. Colvin, Civ. Action No. 2:14-cv-63, 2015 WL 3757204, at *3 (N.D.W. Va. June 16, 2015).

Mascio does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC. Rather, Mascio underscores

23

the ALJ's duty to adequately review the evidence and explain the decision, especially where, as the ALJ held in <u>Mascio</u>, a claimant's concentration, persistence, or pace limitation does not affect the ability to perform simple, unskilled work.  The ALJ has the responsibility to address the evidence of record that supports that conclusion.

Here, evidence supports the ALJ's conclusions that Burger can engage in tasks that involve only short simple instructions throughout an eight-hour workday with ordinary employer provided breaks.  The ALJ commented on how Burger had no attention span problems when watching television or reading, does not require reminders to take medication, and has occasional drowsiness from medications.  R. 21.  In his Function Report, Burger wrote that his "[a]ttention span [is] not affected."  R. 196.  With the exception of a checked box in one of Dr. Lemmer's opinions, no opinion in the record suggests a limitation in concentration, persistence, or pace. Burger's testimony does not suggest any limitations other than fatigue and occasional drowsiness from medications; he reported having no attention problems.  Burger did not offer any specific record evidence suggesting his limitation was not fully covered by the RFC.  The court has not found any evidence suggesting otherwise.  The ALJ appeared to just give Burger the benefit of the doubt regarding this limitation based on his testimony.

Thus, this is not a situation like <u>Mascio</u>, where the ALJ summarily concluded that a limitation of simple, unskilled work accounts for the claimant's moderate impairment in concentration, persistence, and pace with no further analysis or consideration.  Rather, the medical evidence supports the conclusion that, despite his moderate limitation in concentration, persistence, or pace, Burger is capable of performing tasks that involve only short simple instructions throughout an eight-hour workday with ordinary employer provided breaks.  This court is not "left to guess about how the ALJ arrived at his conclusions."  <u>Mascio</u>, 780 F.3d at

637; see also Massey v. Colvin, No. 1:13cv965, 2015 WL 3827574, at *7 (M.D.N.C. June 19, 2015); Hutton v. Colvin, No. 2:14-cv-63, 2015 WL 3757204, at *3 (N.D.W. Va. June 16, 2015).

## CONCLUSION

It is not the province of the court to make a disability determination. The court's role is limited to determining whether the Commissioner's decision is supported by substantial evidence, and in this case, substantial evidence supports the ALJ's opinion. The ALJ properly considered all of the objective and subjective evidence in adjudicating Burger's claim for benefits and in determining that his fibromyalgia would not significantly limit his ability to do basic work activities. Accordingly, I recommend that the Commissioner's decision be affirmed, the defendant's motion for summary judgment be **GRANTED**, and Burger's motion for summary judgment be **DENIED**.

The clerk is directed to transmit the record in this case to the Honorable Glen E. Conrad, Chief United States District Judge, and to provide copies of this Report and Recommendation to counsel of record.  Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days.  Any adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties.  Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings, as

Case 7:14-cv-00190-GEC-RSB   Document 17   Filed 08/17/15   Page 25 of 26   Pageid#: 668

well as to the conclusion reached by the undersigned, may be construed by any reviewing court

as a waiver of such objection.


Enter:  August 17, 2015

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge